We have four cases to hear this morning. I do want to make an announcement. I think all counsel in the four cases have been advised. Judge Baldock obviously is a member of the panel. He is absolutely fully prepared, was absolutely planning and intent to be here and unavoidably, because of unforeseen circumstances, was not able to be here today, but he is participating fully. He will, of course, listen to the audio as soon as it is available for all of the oral arguments in today's proceedings. They will participate just as fully as a member of the panel as if he were physically present. So I do want all counsel to be reassured of that. We simply won't have the, all of us, to have the benefit of his questions this morning. With that announcement, we'll hear the first case of United States v. Carter, and we'll start with the appellant's counsel. Whenever you're ready to proceed. May it please the Court. My name is Katayoun Donnelly and I represent the appellant Saban Carter. The Court should overturn the conviction of Mr. Carter for two main reasons. In this case, we have a fundamental problem with the analytical framework when it comes to distribution of drugs and conspiracy. The problem arises from lack of distinction between the crime of distribution and conspiracy to distribute the drugs. And specifically, when it comes to the affirmative defense of buyer-seller, the Court's lack of recognition of this affirmative defense and lack of requirement for the government to prove its elements has caused two additional issues. I'm sorry to interrupt you, but I don't want you to forget your train of thought. But are there any cases in our circuit or in the Supreme Court that have identified the buyer-seller doctrine as an affirmative defense? Your Honor, I have cited two cases, Ninth Circuit and Fourth Circuit, both of which have identified the buyer-seller as affirmative defense. The Tenth Circuit has not addressed this issue, so it's an issue of first impression for this circuit. Were the instructions that were given, were they in conformance with the pattern instructions of this circuit? Your Honor, I have to double-check on that. I believe that is true because of the fact— well, actually, I don't know the answer to that, Your Honor. But I do know that when we compared the jury instructions with the jury instructions in the Seventh Circuit, it seems like the Seventh Circuit has been the circuit most interested in and subject with multiple opinions, the latest one being Brown in 2013, and they have revised their pattern instructions multiple times based on the recognition of the difficulty when it comes to this specific issue. Go ahead. I was just going to ask you, didn't, I think it was Judge Morris' opinion, specifically say that in the Tenth Circuit we're rejecting the Johnson doctrine from the Seventh Circuit? Your Honor, it appears that in Gallagher's, the court in dicta went ahead to mention that we are rejecting it based on IV, but went ahead and actually applied the broader definition, which has been used in the majority of the circuits. So what we are facing in this case is it comes to the panel to reconcile the precedents in the circuit. We have multiple cases. We have IV itself. We have Evans. We have McIntyre. We have Fox. All of them that have recognized the buyer-seller as the doctrine that applies when we are dealing with conspiracies with distribution of drugs. And yet, I'm looking at Evans, and it draws the distinction on buyer-seller with the buyer being a consumer of the product. It doesn't say if the buyer is going to redistribute, then the buyer-seller rule would apply. So are you seeking to extend our law? Your Honor, I don't believe it is an extension. I believe that each case, understandably, has been decided based on the facts before the court. For example, in IV, even though you're dealing with the end consumer, the court acknowledges that the government has to do something more than just the buyer-seller. And that is a recognition of the facts. Interestingly enough, if you compare the situation in our case versus McIntyre, which is actually identical, and we rely on McIntyre in saying just apply that, but comparing it to the end consumer in IV, so we have presumably the conspiracy among the sellers, and then you have the end user who's buying it. And the court says that one person is not a part of a conspiracy, even if there is a conspiracy here, just by mere fact of buying, you haven't become a part of it unless the government proves beyond a reasonable doubt that there was that agreement to conspire to do this. So our case is the reverse of that. So we have all these guys that the government admits have been the real people in the conspiracy, in the drug dealers that they caught. All of them were pleaded out, and then we have my client at the end of this who had only been engaged in one-on-one sales. And so the analysis is identical. We are just flipping the sides as to where was the alleged conspiracy, if there was any, and this then the one person who's not a part of any conspiracy. And that is the analytical problem because by lack of recognition of the buyer-seller, then we didn't have your instructions. The jury was not instructed at all as to the theory of defense. Then we have the issue of sufficiency of evidence, which comes down to the same analytical problem. Both as to the conviction and as to the sentencing. And then I was going to get to the second fundamental problem that I was going to point out to, which is we have the, and I'm hoping that I'm pronouncing the name of the case correctly, Elin, that the Supreme Court recognizes the fact that when you have a part that is an element, like, and I want to, I'm repeating myself, we are not dealing with a charge of distribution. We are dealing with conspiracy to distribute 500 grams and more. So the problem is that it appears that the jury and the government were focused, government focused the jury on whether there was evidence of 500 grams. That is not the issue. The issue is whether the jury and the judge actually asked the court for finding that there was a conspiracy, an agreement to distribute 500 grams or more. How do you deal with your, the government's argument that if you look at the part of instruction 25 that comes after what you have quoted, with the special interrogatory, that in combination, the jury was specifically asked to fill out the range of the quantity of methamphetamine on the special interrogatory form, and I think it was the second of the last sentence in instruction 25, was asked to determine that quantity beyond a reasonable doubt. So didn't it, the combination comply with Elin? It did not, Your Honor, because the combination was asking how much do you think was distributed? That is not the standard. The crime, again, is not distribution. The crime charged is the conspiracy to distribute 500 grams, and the 500 grams that itself triggers the mandatory minimum. So you are not dealing with the government proving and getting a conviction for distribution of 500 and more, which I, of course, I have an issue with that, too. That is my last point. But the most important part of this is that based on the analysis in Ellis, there should be a finding. They should be asked, the jury should be asked, did you find there is an agreement, a conspiracy to distribute 500 grams or more? That was not the question. So I'm sure I understand your position. Are you saying that the conspirators have to agree we are going to distribute more than 500 grams rather than we're going to distribute drugs and we're going to do it until the last cow dies and it's probably going to be over 500 but maybe not? Your Honor, if the charges and the trigger for the mandatory minimum starts at the conspiracy to distribute 500, yes, that is our argument. That otherwise, if there was anything less, an agreement for something less, the sentence for my client would have been less. And based on Allian, that's exactly the analysis. When it becomes the element, then it has to be given to the jury, and specifically the jury should be asked to find and get their finding that they found an agreement beyond a reasonable doubt for that amount. That didn't happen. But even if that was not the case, even if that was just the quantum itself, as we have raised, this was not an argument that was raised that there was an additional conspiracy which there is no evidence of. Do you concede that's not our circuit's law right now and you're asking us to extend the law to make it that? Or do you contend that's our law as we sit here today? I contend that it hasn't been brought up, so I wouldn't say that it is not the law, Your Honor. I think the issue is that have we discussed this in length the same way that the Seventh Circuit has? I'm sorry, I have only about 40 seconds. I would like to reserve that for rebuttal. Oh, certainly. Thank you, Your Honor. Mr. Scott. Good morning, Your Honors. May it please the Court? Ms. Donnelly. Your Honors, Thomas Schott for the United States. I was also trial counsel below. At the outset, Your Honors, I wanted to address a couple of corrections to the government's brief. One was more of a minor correction. On page 17, I quoted from Exhibit 11A, that's an intercepted jail call, in which Ms. Eichler, one of the co-defendants, actually said there was one thing that was able to be put away. In the brief, I quoted it as something. So that's just a more minor correction. A more significant factual issue, Your Honors, that I'm actually going to withdraw a contention I made in the brief is that, as the Court will recall, in this case toward the conclusion of the case, Ms. Eichler arrived at a motel in Wyoming on May the 12th, intending to pick up an associate named Mr. Flores. In fact, that was a sting. And in the brief, I made the argument that the jury could have inferred that, in so doing, she intended to facilitate a methamphetamine transaction. Well, having reviewed the record again, Your Honors, in preparation for oral argument, I don't think that there was any methamphetamine transaction that had been arranged at that time. Mr. Flores certainly had spoken with Siobhan Carter about obtaining marijuana at that time. And then in a recorded call that Mr. Flores made after his arrest, he, and this is Government's Exhibit 15A, he essentially told Mr. Carter that he had a little bread to play with, so you might as well bring whatever you can. And certainly that could have been inferred to include methamphetamine, but in terms of the evidence, Your Honors, the evidence would have been that, at the time, all that had been, quote, unquote, arranged or discussed was marijuana. The Government would still submit that there is sufficient evidence to find all the elements of conspiracy vis-à-vis both defendants. But in terms of the argument that Ms. Eichler intended to facilitate a methamphetamine transaction that day, the Government would withdraw that argument. Your Honors, turning now to the issues that have come up in the argument so far, first let me address your question, Judge Bacharach, about the affirmative defense issue. I'm not aware if there's any case that has found buyer-seller to be an affirmative defense, but certainly the Government's position is that it is not. An affirmative defense is when a defendant essentially says, Government, even if you prove all the allegations that are alleged in that charging document, I am nonetheless not guilty because... The quintessential example would be self-defense. Another one that comes to mind is duress, but the self-defense example I think is useful. Say I'm charged with aggravated assault. Some variation of intentionally causing serious bodily harm to someone else. If I raise the affirmative defense of self-defense, I'm essentially saying, Yes, I intentionally caused serious harm to that person because he was trying to kill me. I was acting in self-defense. Therefore, if all the allegations are true, I am still not guilty. The buyer-seller argument is merely an argument. It's not an affirmative defense. It's merely an argument that the Government didn't prove all those elements. In other words, in seeking to raise that buyer-seller defense, the defendants in this case are not saying, Government, we can concede all your allegations, but we're still not guilty. They're saying there is no conspiracy. There is no agreement. Let me ask you, probe that a little bit. Now, as I understand, the counter-argument from the appellant is that they see it differently, that Mr. Carter and Ms. Eichler could be found to have been conspiring with one another, or that Mr. Carter could be conspiring with, say, Mr. Gilson, for Mr. Carter to sell it, for Mr. Gilson to buy it. But that that is not, and that that was an element of the charge of conspiracy, that they're saying that that cannot be, under the law, a conspiracy, based on the Seventh Circuit's principle. And so they're saying that even the jury, without further guidance, could find that Mr. Carter was guilty of conspiracy, but for the wrong reason. The jury could be finding a conspiracy where none should have existed. I'm not asking it very well. No, I understand the question, Judge Bachrach, I think, and I guess I would answer that by saying that the existing jury instructions were perfectly adequate for the defendants to raise that argument if, in fact, that was the defense, that there was no, that between, say, Mr. Carter and Mr. Gilson, that's setting aside, really, the government's primary theory, which was that Mr. Carter and Miss Eichler are the conspirators. The government really, as the evidence developed at trial, the downstream folks as conspirators became less important, really. But Mr. Carter could have made that argument with the existing instructions, that he and Mr. Gilson had no agreement, they had no interdependence, they didn't have the same objective. The issue with the buyer-seller instructions has been observed here, and as the government argued below and on appeal, that they are inconsistent with this court's precedent, and that at a minimum a buyer-seller instruction that was offered to the jury in this case needed to contemplate this court's limitation or this court's holding that it only applies to end users. But more fundamentally, because that buyer-seller instruction didn't, because the buyer-seller defense, quote-unquote, is simply an argument that the elements aren't satisfied, that so long as the elements are adequately instructed on, that that additional instruction is unnecessary, and the court, therefore, didn't abuse its discretion by declining to give it. You had asked Judge Phillips whether the instructions conformed to the pattern instructions. I believe generally they did. There's one area in which they did not, which was, in fact, insofar as quantity is concerned, this court's pattern instruction on quantity is arguably not sufficient under the more recent case law. Looking at instruction 2.87, this is the court's pattern instruction on quantity, and the language suggested is that an element would be that the overall scope of the conspiracy involved at least name amount of name-controlled substance, which under Ellis would not be sufficient. It doesn't have that foreseeability limitation. So the instructions that the government offered in this case and that the court offered, instruction 18 coupled with instruction 25, coupled with the special verdict form that you mentioned, Judge Bacharach, really went beyond the pattern instructions in an effort to satisfy Ellis, that foreseeability requirement, and Alene. So the instructions, I believe, were accurate under this court's precedence in terms of that foreseeability requirement. I don't think that this necessarily matters, but the verdict form charges, before it asks guilty or not guilty, 841A1, and then it also says B1A. Was the B1A put in there mistakenly? It may be, Your Honor. Okay. And I would also note that I believe at least one of the defendants raised this argument or raised this point as well. Instruction 18 is somewhat inartful, I believe, for the same reason. As I recall, I'm not looking at it right now, but before setting forth the elements of just the underlying conspiracy, which didn't have a quantity element, there's a mention of the charge being conspiracy to distribute 500 grams. And certainly if I were redrafting that instruction today, I would remove that, and I agree with your observation, Judge Phillips, that B1A cite, I don't think it meant anything to the jury, because I don't think they would have appreciated that the B1A was the 500-gram provision, but certainly I don't think that that should have been included in the verdict form. Again, I don't think it had any sort of meaningful or material or any effect really on the verdict, but certainly as a matter of drafting, that shouldn't have been there. Your Honors, unless the Court has additional questions for me, I will let it rest there. I had one question, but I don't want to defer to you. Please proceed. I had one question, and I don't remember it being in the briefs, but I want to ask about it because I wonder if it's a jurisdictional issue, at least with regard to the quantity. On page 37 of your response brief to both of Ms. Eichler and Mr. Carter, you argued that Mr. Gilson had testified that he had gone to the home in Midvale I think eight to ten times to purchase one to two ounces from Mr. Carter. Well, Midvale is in Utah. The indictment charges a conspiracy in Wyoming. How are the sales from Mr. Carter to Mr. Gilson at the Midvale, Utah home, how are those within the jurisdiction of the District of Wyoming, and how do they support the charge as alleged in the indictment? Your Honor, my understanding of the minimum requirement to establish venue for prosecution in a conspiracy case is that either the agreement would have needed to be formed in the District of Wyoming or that any member of the conspiracy does any act in furtherance of the conspiracy in the District of Wyoming. So the government's theory for venue essentially would have been that Ms. Eichler's actions in Wyoming established venue for prosecution of the conspiracy despite the fact that those later sales, as you observe, took place in Utah and despite the fact that Mr. Carter himself never came to Wyoming. So in other words, the government's position is if there is a conspiracy that involved some participation in Wyoming that you can then include within the quantity and the base offense level for Mr. Carter in a conduct really anywhere in the United States. So long as it's traceable to that same conspiracy, Your Honor, in furtherance of which an overact was committed in Wyoming, which could also, of course, include Mr. Gilson's actions in Wyoming, assuming he was deemed to be a conspirator. Okay. Thank you very much. Thank you, Your Honor. Out of fairness, because of me, I took the appellate an hour and 50 seconds over. I'm going to give that to the appellate so that everybody has equal time. Thank you, Your Honor. It would have been very difficult to stay with the 40 seconds. So I would like to go back to your question. Judge Phillips asked the issue of whether the affirmative defense has been decided in this case in the 10th Circuit. In addition to the 7th and 9th Circuit that we cite to, by definition, what is happening, again, is the structural problem between the buyer-seller agreement itself and the conspiracy. So by the analysis of ID itself, when the court says the buyer-seller itself is not enough, you need to prove more, even though we don't say affirmative defense, we are saying it is an affirmative defense. Answering your question, Your Honor, and going back to the Gilson problem, we have phrased that under the analogy of the no chain. There is no chain here for Mr. Carter to be a link in it. We don't have any interdependence. Mr. Gilson himself says that I found another seller and I went with that. What kind of conspiracy would it be that when you find somebody else who is giving you a better price, you just cut whatever relationship this is, which couldn't have been anything more than a buy-sell, and move on? Were those amounts and those transactions with the new seller with the better deal, were those charged and prosecuted as part of this case? Mr. Gilson got a plea and he testified in this case. We are not aware of any particular charge based on that. So what is happening is that there is, when you look at this case, whether the evidence that was presented to the jury, the PSI, or the government's arguments on appeal, there is nothing more than a buy-sell relationship between Mr. Carter and any of these individuals. There is no mention of any agreement to do anything more for him to benefit from any additional sales, for him to even be aware of what Mr. Gilson or Mr. Florence were doing. In this case, the conspiracy specifically only names three people. Ms. Eichler did not testify against Mr. Carter. There's nothing there. Mr. Gilson only talks about this very short-period relationship, which was caught when he found somebody better. And we have Mr. Florence, the same thing. I see that my time is up, and we request that the Court overturn the conviction and the sentence. Thank you. Thank you, Your Honors. This matter will be submitted. Thank you, both counsel.